## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SHARON WINEGARD,
                Plaintiff,

v.                                                 Case No: 8:06-cv1594-T17TGW

W.S. BADCOCK CORPORATION,
a Florida corporation,
                Defendant,

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case comes before this Court on Defendant, W.S. Babcock's, Motion for Summary Judgment (Dkt. 10) filed on October 29, 2007, and Plaintiff, Sharon Winegard's, Response in Opposition to Defendant's Motion for Summary Judgment (Dkt. 13) filed on November 16, 2007. After carefully considering the motions, record, and applicable law the Defendant's Motion is **GRANTED**, in part, and **DENIED**, in part, for the reasons set forth below.

## BACKGROUND

On August 29, 2006, Plaintiff filed a three-count complaint alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* (hereinafter "Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 623 (hereinafter "ADEA"), and the Florida Civil Rights Act of 1992, Ch. 760, Fla. Stat. (hereinafter "FCRA"). Under both Title VII (Count 1) and the FCRA (Count III), Plaintiff alleged discriminatory practices based on gender such as failure to promote, disparate terms, conditions and privileges of employment, sexually hostile work environment, and wrongful discharge. (Dkt. 1) Additionally, Plaintiff alleged that Defendant terminated her employment in violation of the ADEA (Count II). (Dkt. 1). On November 16, 2006, however, Plaintiff voluntarily dismissed her claims based on age

1

discrimination (Count II) and further limited her gender discrimination claims to only three specific allegations:  (1) failure to promote to Key Holder position, (2) disparate treatment with respect to her final warning, and (3) wrongful discharge.  (Dkt. 15).

Plaintiff is a woman who began her employment with Defendant as a sales associate in 1988 until she was terminated on September 5, 2005.  (Dkt. 13).[1]  Initially, Plaintiff was employed at Defendant's Lakeland South store until November, 2003, when she transferred to the Lakeland Christina store.  Plaintiff's claims stem from the time period between July 2003, when Ray Blevins became her Store Manager and Supervisor, and September 5, 2005, when Defendant terminated her employment.

Defendant has a disciplinary policy that normally escalates from a verbal warning to termination in basically four (4) progressive steps: a verbal warning, a written warning, a final warning, and termination.  Per the policy, Defendant can omit one or more of the steps based on the severity of the offense and the employee's overall work record.  According to Plaintiff, only the latter two steps were taken in this case; Plaintiff was given a final warning and eventually terminated for non-compliance therewith.

Throughout her tenure, Plaintiff consistently maintained a higher sales volume than any other sales associate in the company.  (Dkt. 10).  Indeed, Plaintiff's sales volume more than doubled that of the next highest salesperson in the store.  In her last year of employment, Plaintiff averaged $140,599.63 in monthly sales.  Whereas, Bob Aveyard, the Christina store's second most productive salesperson averaged $66,563.46 per month.  Plaintiff alleges that Defendant treated her differently than other male employees, lowered her evaluation, and eventually terminated her because of her gender.

---

[1] Unless otherwise noted, Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment (Dkt. 13) and supporting depositions (Dkts. #16-21) provide the factual basis for the background information.

Despite her impeccable sales record, Plaintiff's evaluations were considerably lower after Mr. Blevins assumed responsibility of the Christina store.  Plaintiff's first evaluation from Mr. Blevins, on October 13, 2003, assessed her performance as "competent" – a decrease from "exceptional" as appraised by her previous supervisor.  Plaintiff's overall evaluation rating plummeted from 6.93 to 5.  Mr. Blevins philosophy on evaluations is that a lower score will provide ample room for performance improvement.  (Blevins Depo., Dkt. 21-2).  Specifically, in one of the categories – "Quality/Quantity of work" – Mr. Blevins lowered Plaintiff's score from seven (7) (last evaluation prior to Mr. Blevins) to six (6) on a scale from one (1) to nine (9).  While Mr. Blevins could not recall whether he had given the highest available score in this category to other employees, he indicated that it was unlikely that he had ever given a nine (9) but "probably" an eight (8).  Mr. Blevins noted generally that Plaintiff needed to improve her ability to handle inauspicious situations.  The following year, Plaintiff's overall rated dropped yet again to 4.7.  Despite Plaintiff meeting and exceeding the projected sales goals, Mr. Blevins again gave her a six (6) in the "Quality/Quantity of work" category.

Additionally, Mr. Blevins had a policy that required a male employee to be present when the store closed.  It is this policy that Plaintiff alleges kept her from being promoted to the key holder position, which came with an additional one-hundred dollar per month stipend.  Instead, Mr. Blevins appointed Mike Sellers, a less experienced male employee, to the position.  According to Plaintiff, Mr. Blevins expressly informed her that he did not want women in that position, nor did he want women closing the store at night.  Indeed, Mr. Blevins testified in this deposition that it was his policy, for safety purposes, that at least one male must be present when the store closes.

In March of 2005, Defendant instituted a revised sales compensation plan that displeased several employees, including Plaintiff.  Plaintiff admits that she voiced her complaints to other employees and, in fact, several of her colleagues did the same.  What is disputed, however, is whether the statements were made in front of customers.  On April 15, 2005, Jim Vernon, Director of Employee Relations, and another Human Resources professional presented Plaintiff with a final warning pursuant to Defendant's progressive disciplinary policy.  Prior to the final warning, according to Defendant, David Gonyea verbally warned Plaintiff that "bad mouthing" the corporation and its policies is unacceptable and will not be tolerated.  Plaintiff disavows the existence of any such verbal warning and alleges that she received only one warning prior to her termination.  The final warning expressed the company's intolerance of Plaintiff's negative communication regarding the pay plan "to co-workers and customers alike."  Plaintiff maintains that she never "complained or made negative comments in the presence of customers." Nonetheless, the final warning made clear that if she continued to disparage the corporation she would be terminated.

Plaintiff also alleges mistreatment based on the method employed to issue the final warning.  Specifically, Defendant presented Plaintiff with the final warning in the store's showroom in front of customers instead of using a private office.  During the meeting, Plaintiff became increasingly upset and at some point actually shed tears.  Plaintiff alleges that some of the customers in the store were waiting for her and watched the episode unfold.  There are two instances of disparate treatment in the record with respect to male employees.  According to Assistant Manager, Roberta George, the Employee Relations staff had a discussion with a male employee in one of the offices.  Plaintiff recalled another occasion where Mr. Blevins

disciplined another male employee in one of the private offices out of view from other employees and customers.

In July of 2005, a customer engaged in a series of discussions with Mr. Blevins and the service department regarding a malfunctioning La-Z-Boy chair.  Mr. Blevins ultimately assigned Plaintiff to handle the matter at the Christina Store.  Unable to reach a suitable compromise, the customer eventually contacted Defendant's management and further explained his discontent with the offered resolution.  In addition to the chief complaint, the customer mentioned several negative encounters with the Christina store employees – namely Plaintiff and Mr. Blevins. According to the complaint, Plaintiff made several disparaging remarks about Mr. Blevins both personally and professionally.  The customer also took umbrage with Mr. Blevins calling him a "liar."  It is this customer complaint that ultimately led to Plaintiff's termination.

On September 2, 2005, Mr. Blevins met with Mark Price, Defendant's Senior Vice President of Corporate Retail Management, discussed the customer complaint, and agreed that Plaintiff should be terminated.  Three days later, Mr. Price, notified Plaintiff of Defendant's decision to terminate the employment relationship.

## **STANDARD OF REVIEW**

Summary Judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©).  Any fact is material if it could influence the fact-finder's determination of an issue that affects the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court, however, is not called upon to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477

U.S. 317, 322-324 (1986).  "When the moving party has carried its burden under Rule 56©), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  In other words, the non-moving party must make a sufficient showing that establishes the existence of an essential element that the party will have the burden of proof at trial.  *See Jones v. Gerwens*, 874 F.2d 1534, 1538 (11th Cir. 1989).  The Court's role, however, is not to resolve genuine factual issues; when genuine issues are present, the Court must deny the motion and proceed to trial.  *Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1369 (11th Cir. 1982).

## DISCUSSION

Plaintiff seeks relief under Title VII (Count I) and  the FCRA (Count II), alleging failure to promote to Key Holder position, disparate treatment with respect to her final warning, and wrongful discharge.  Because claims under Title VII and FCRA are appropriately analyzed under the same framework when the evidence adduced supports both claims, the Court will address both claims simultaneously.  *See, e.g., Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  There are three ways a plaintiff can successfully prove discrimination – direct, circumstantial, or statistical evidence.  *Id.*  In this case, Plaintiff does not proffer any direct[2] or statistical evidence and instead relies solely on the circumstantial evidence in the record.  Accordingly, the Court must employ the three-part test established in *McDonnell Douglas Corp. v. Green* to determine whether a claim is actionable under Title VII and FCRA for gender discrimination.  *See* 411 U.S. 792, 802 (1973).  First, the Plaintiff has the burden of presenting a *prima facie* case of discrimination.  *Id.*  If successful, Defendant must articulate a legitimate business purpose for the employment decision.  *Id.*  If Defendant satisfies its burden of

---

[2] There is, however, arguably direct evidence with respect to the failure to promote to key holder.

production, the burden shifts back to Plaintiff to show by a preponderance of the evidence that the proffered non-discriminatory reason was merely pretext. *Id.*

## I.     Plaintiff's Prima Facie Case

To establish a *prima facie* case of discrimination, a plaintiff must show that she was: (1) a member of the protected class; (2) subjected to an adverse employment action; (3) qualified for the position; and (4) replaced by a person outside the class or suffered from disparate treatment because of membership in the protected class. *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). The burden to prove a *prima facie* case of discrimination is not onerous; indeed, Plaintiff need only establish, by a preponderance of the evidence, sufficient evidence to permit an inference of discrimination. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Neither party disputes a finding that the first three elements are met,[3] and the Court finds that Plaintiff met the burden of establishing the fourth element of her *prima facie* case with respect to certain allegations.

The Eleventh Circuit requires the Court to find that Plaintiff and the comparator(s) are "similarly situated in all relevant respects," *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003), as a means to avoid second-guessing an employer's business decision. *Cf. Cooley v. Great Southern Wood Preserving*, 138 Fed. Appx. 149, 157 (11th Cir. 2005). "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Jones v. Bessemer Carraway*

---

[3] Defendant does not contest, for the limited purpose of its Motion for Summary Judgment, a finding that the first three elements are satisfied to establish a *prima facie* case. (Dkt. 10).

*Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998), *opinion modified by* 151 F.3d 1321 (11th Cir.

1998).

Plaintiff proffered sufficient evidence to show that she was treated differently than her

comparators.  Defendant terminated Plaintiff's employment after a customer complained that she

made disparaging remarks about her supervisor, Mr. Blevins.  In line with Defendant's

progressive discipline policy, Plaintiff was terminated after receiving a final warning.  The final

warning came after the HR department received reports that Plaintiff was increasingly negative

to both co-workers and customers after Defendant implemented a new, less than popular, pay

plan for sales associates.  The final warning informed Plaintiff that if "she 'bad mouths' the

corporation . . . it would result in termination."  (Dkt. 13, Exh. 44).   One of the factual issues

disputed by the parties is whether this was the first warning given to Plaintiff regarding this type

of behavior.  (Dkt. 10; Dkt. 13).  Even if true, Defendant's discipline policy gives the decision-

makers reasonable discretion to omit certain measures based on the severity of the offense and

the employee's overall work record.  In order to support a finding of discrimination, Plaintiff

must be able to point to a male comparator who engaged in a similar quantity and quality of

misconduct and yet was treated differently.  *See Maniccia v. Brown*, 171 F.3d 1364, 1368-69

(11th Cir. 1999).

Plaintiff mentions two specific male employees whom she believes engaged in a similar

quantity and quality of misconduct, but were treated more favorably.  First, Plaintiff alleges that

sales associate Tony Bass, a male employee in the Christina store, engaged in similar

misconduct and was treated differently.  The Court, however, only considers those acts that are

similar in all relevant respects to "bad-mouthing" and disparaging the corporation.  Thus, the

allegations of Mr. Bass' alcohol-related incidents, inability to meet sales goals, and sexual

harassment, albeit inappropriate, are not relevant for the purpose of establishing Plaintiff's *prima facie* case.   Mr. Bass, however, did receive two final warnings for two ostensibly distinct reasons that are similar to Plaintiff's conduct.   In both instances, Mr. Bass made inappropriate remarks either to or in the presence of customers and co-workers.   Specifically, Mr. Bass inappropriately suggested false or misleading information in one instance, and in the other instance he used curse words and sexually demeaning language within earshot of customers – both are inappropriately spoken to customers and both are likely to directly affect sales. Defendant argues that Mr. Bass' two instances were separate and distinct and that "the two final warnings were not for the same misconduct."  (Dkt. 10).  If that reasoning holds true, then Plaintiff's separate instances of misconduct are no more sufficient to warrant termination.  To be clear, Plaintiff was terminated after receiving a final warning for "bad-mouthing" the corporation's implementation of its new and revised pay plan.  She was eventually terminated for making disparaging remarks about Mr. Blevins, her immediate supervisor.  Defendant cannot have its cake and eat it too – Defendant must either admit that it terminated Plaintiff for actions unrelated to the final warning, or that Mr. Bass was treated differently and given a second chance.  In either case, Plaintiff met its burden of showing a *prima facie* case of wrongful termination by producing evidence that Mr. Bass received two final warnings, for essentially the same conduct, without being terminated.

Conversely, none of the conduct allegedly committed by Fred Ledford, another sales associate in the Christina store, is similar to the conduct of Plaintiff and Mr. Bass.  Mr. Ledford's alleged misconduct stems from dishonestly with management, absenteeism, and cash drawer shortages.  Indeed, any nexus is far too attenuated at best to be considered evidence of disparate treatment of members outside of Plaintiff's protected class.

9

Moreover, Plaintiff was replaced by a male employee.  While the absence of such a finding would not be an absolute bar to the establishment of Plaintiff's *prima facie* case, its presence is, at the very least, relevant to her claim of disparate treatment proscribed by Title VII and FCRA.  *See, e.g., Carter v. Miami*, 870 F.2d 578, 583 (11th Cir. 1989).  Whether the trier of fact ultimately decides that Defendant terminated Plaintiff in contravention of Title VII and FCRA is left for another day.

Plaintiff also alleges discrimination based on other acts committed by Defendant.  First, Mr. Blevins admitted during his deposition that he treated women different than men when promoting sales associates to the key holder position.  (Blevins Depo., Dkt. 21-2).  Indeed, during his deposition, Mr. Blevins stated:

> Q: Was there ever any requirement to make sure that there was a male employee around when you were closing at night?
>
> A: It was my policy that I wanted – I never wanted it to be all females closing as a safety precaution.
>
> Q:That was throughout your time at the Christina store?
>
> A: Yes

(Blevins Depo., Dkt. 21-2 at pp. 179-80).  Mr. Blevins safety concerns for discriminating are relevant, if at all, when discussing a legitimate business purpose.  At this point, it only matters whether the Court determines that the preponderance of the evidence shows a discriminatory practice of treating similarly situated persons differently.  The Court feels that it does.  Moreover, Mr. Blevins' statements are likely direct evidence of discrimination.  *See, e.g., Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1358-59 (11th Cir. 1999) (quoting as an example of direct evidence a management memorandum instructing, "Fire Early-he is too old").  Thus, Plaintiff met its burden of showing a *prima facie* case of failure to promote to key holder

position by producing evidence that Mr. Blevins admittedly treated males, members outside of Plaintiff's protected class, differently than females.

Second, the manner is which the HR department administered the final warning is different from other employees outside the protected class. Evidence that Defendant admonished Plaintiff before the eyes and ears of her co-workers and customers when there is also evidence that other male employees were taken into the protective confines of an office is sufficient to show disparate treatment to members outside her protected class. Not all employment actions, however, fall within the protection of Title VII. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (holding that an adverse employment action is actionable under Title VII if "an employee . . . show[s] a *serious and material* change in the terms, conditions, or privileges of employment") (emphasis in original). A reasonable person must not only view the employment action as tangible, but also materially adverse to the worker's employments conditions. *See, e.g., id.* at 1239 (stating as examples "hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a *significant* change in benefits") (emphasis in original). While Defendant may have subjected Plaintiff to a less than desirable work environment, Plaintiff failed to provide any evidence that the terms, conditions, or compensation of employment suffered in a material and tangible way. Thus, Plaintiff's claims under Title VII and FCRA for disparate treatment during the final warning are not actionable.

Finally, Plaintiff's last claim that Mr. Blevins gave her unsupportable low scores in her evaluation cannot withstand the careful scrutiny of the Court. Plaintiff failed to identify any other employee with comparable sales that received higher scores to any degree of certainty. In fact, the record contains only Plaintiff's own subjective belief that Mr. Blevins scored her

evaluation too low and Mr. Blevins statement during his deposition that he "probably" scored someone higher at some point.  These facts, standing alone, are insufficient to establish actionable disparate treatment under Title VII and the FCRA.

To establish a *prima facie* case, all that Plaintiff must do is show by a preponderance of the evidence that similarly situated members outside her class were treated differently.  The Court finds that the evidence as a whole is sufficient with regard to the certain claims.  It must be borne in mind that this is not the end of the road for Plaintiff.  Plaintiff has merely established a rebuttable presumption that Defendant unlawfully discriminated her by: (1) wrongful termination, and (2) failure to promote.  *See, e.g., Chapman*, 229 F.3d at 1024.

## II.   Defendant's Burden to Articulate a Legitimate Business Purpose

Once Plaintiff proves a *prima facie* case of discrimination, Defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action.  This is not a burden of persuasion, but merely a burden of production; Defendant need only present a genuine issue of fact by articulating a legitimate business reason for it adverse employment actions.  *See Texas Dept. of Community Affairs*, 450 U.S. at 253; C*hapman*, 229 F.3d at 1024; *Aldabblan v. Festive Pizza, Ltd.*, 380 F.Supp.2d 1345, 1353 (S.D. Fla. 2005).  "Because the defendant need only produce, not prove, a nondiscriminatory reason, this burden is 'exceedingly light.'"  *Walker v. NationsBank, N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995) (citing *Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983).

Defendant was able to meet their burden of producing evidence that Plaintiff was terminated for a legitimate business purpose.  A company is not required by law to retain sub-par employees who under-perform their duties, disregard their manager's directions, and maintain a slapdash attitude at work.  *See*, *e.g.*, *Aldabblan*, 380 F.Supp.2d at 1353.  Indeed, a showing of

one or all of these may be sufficient in many circumstances to meet this burden of production. This Court will not second-guess a company's employment decision unless there is a discriminatory motive lurking in the guise of management policy. *Cf. Damon*, 196 F.3d at 1361. In this case, Defendant adduced evidence that Plaintiff disregarded her manager's, Mr. Blevins, directives on more than one occasion. According to Defendant, Plaintiff was given a verbal warning and a final written warning that continued disparaging remarks about the corporation would result in her termination. Defendant further adduced ample evidence to show that Plaintiff did not heed these warnings and instead continued to make disparaging remarks about Mr. Blevins and the corporation. Thus, Defendant met its burden of showing a legitimate business reason for terminating Plaintiff.

Similarly, Defendant articulated legitimate reasons for denying Plaintiff the key holder position.[4] Mr. Blevins testified in his deposition that he did not want women in the key holder position as a safety precaution. A manager is better suited than courts to make decisions regarding the safety of the employees under her watch. This is not to say that Plaintiff will be unable to show that the reasons stated are merely pretext. Because Defendant articulated legitimate business reasons for its adverse employment actions, Plaintiff must present substantial rebuttal evidence to show that these proffered justifications are merely pretext for discrimination with respect to her claims for wrongful termination and failure to promote.

---

[4] The Court was able to glean from the record a sufficiently articulated reason for denying Plaintiff the key holder position. In other words, Defendant need not set forth in excruciating detail its employee's, Mr. Blevins, justification for his actions when it is clearly stated along with his purposeful discrimination. (Blevins Depo., Dkt. 21-2 at pp. 179-80).

### III.    Plaintiff's Burden to Show Pretext

Plaintiff bears the ultimate burden of persuading the trier of fact that Defendant's proffered justifications are nothing more than pretext for intentional discrimination.  *See Texas Dept. of Community Affairs*, 450 U.S. at 256.  Pretext is established "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Id.* (citing *McDonnell Douglas Corp.*, 411 U.S. at 804-05).  "[A]lthough the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual."  ***Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133, 143 (2000) (internal citations omitted).

It is essential that Plaintiff be afforded the opportunity to prove that Defendant's reasons are false.  *See Texas Dept. of Community Affairs*, 450 U.S. at 253.  Again, it must be borne in mind that this is Defendant's Motion for Summary Judgment.  Thus, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves*, 530 U.S. at 150.  Yet, that is what Defendant urges the Court to do.

Whether Plaintiff can prove intentional discrimination will, in large part, depend on who the jury believes.  At this point there are several unresolved genuine issues of fact.  For instance, whether Defendant warned Plaintiff more than once to refrain from speaking negatively about the pay plan is in dispute.  Defendant maintains that Mr. Gonyea verbally warned Plaintiff prior to the final warning and Plaintiff denies the same.  Additionally, "bad-mouthing" the corporation

in front of customers is the alleged impetus for Plaintiff's final warning.  While Plaintiff admits

discussing the pay cut with other employees, she denies making any disparaging statements

about Defendant to customers.  The record is replete with disputed facts – including, but

certainly not limited to, Mr. Blevins' inappropriate sexual remarks to Plaintiff and other women.

The Court will not futilely delve into the wake of disparity to prove a point that is abundantly

clear – whether Defendant intentionally discriminated against Plaintiff is for a jury to decide.  It

is improper for the Court to place any weight or credibility on any given statement.  The only

proper course is to view all disputed facts in a light most favorable to Plaintiff; that Defendant's

proffered justifications are merely pretext for intentional discrimination is a natural inference

drawn from Plaintiff's recollection of the facts.  Thus, Defendant's Motion for Summary

Judgment with respect to Plaintiff's wrongful termination and failure to promote claims is

**Denied**.  Defendant's Motion for Summary Judgment with respect to Plaintiff's claims for

disparate treatment in giving a final warning is **Granted**.

## <u>CONCLUSION</u>

Having read Defendant's Motion for Summary Judgment and Plaintiff's Response in

Opposition, it is:

**ORDERED** that the Defendant's Motion for Summary Judgment (Dkt. 10) be **Granted in part**, with respect to any claim of disparate treatment regarding the issuance of the final warning and Count II is dismissed based on the voluntary dismissal.  Further, it is **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 10) be **Denied in part**, since the Court has found there still exists a factual issue in dispute regarding the claims for wrongful termination and failure to promote.

**DONE AND ORDERED** in Chambers in Tampa, Florida, this 23rd day of April 2008.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:  All parties and counsel of record